"EL ANCORA", demandante y apelante, *v.* ADRIÁN BRENES, demandado y apelado.

No. 4775.—*Sometido:* Febrero 5, 1929. *Resuelto:* Junio 24, 1929.

*Gustavo Rodríguez,* abogado de la apelante; *A. Porrata Doria,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

"El Ancora," una sociedad de seguros de vida y contra accidentes incorporada de acuerdo con las leyes de esta Isla, inició en la Corte de Distrito de Guayama un procedimiento de *mandamus* contra Adrián Brenes, agente suyo que fué en aquel distrito.

Se expidió el auto en forma alternativa. Brenes contestó negando los hechos esenciales de la demanda y alegando además que ésta no aducía hechos suficientes para determinar una causa de acción y que la acción ejercitada no era la procedente.

Se convino por las partes en someter primero mediante alegatos escritos a la decisión de la corte las cuestiones envueltas de carácter previo, y, resolviéndolas, la corte dictó sentencia final declarando sin lugar la demanda y condenando en costas a la demandante.

No conforme "El Ancora," apeló para ante este tribunal, señalando en su alegato la comisión de siete errores. Los seis primeros pueden estudiarse conjuntamente, ya que la verdadera cuestión a resolver es la de si dados los hechos alegados, procede o no el auto de mandamus o debe seguirse un pleito ordinario.

En la demanda se dice, en resumen, que el deman-

.dado fué agente de la demandante desde el 19 de abril de 1923 hasta el 30 de marzo de 1928 en que cesó en su cargo; que sus facultades y deberes como tal agente eran los de solicitar suscriptores para la demandante, cobrar los recibos que para ellos expedía la demandante cada vez que ocurría un accidente, enviar a la demandante dentro de los cuarenta y cinco días siguientes al en que llegaran a su poder los recibos, el montante de lo recolectado, devolviendo los recibos no cobrados a fin de que la demandante pudiera hacer la liquidación del accidente; que el demandado percibía como remuneración por sus servicios un diez por ciento sobre los cobros en cada accidente, y una comisión proporcional por cada nuevo suscriptor que obtenía; que desde 1923 a 1928 la demandante entregó al demandado para su cobro recibos por valor de $25,155, habiendo entregado a su vez el demandado a la demandante $13,263.52 y devuelto por incobrables recibos por valor de $3,665; que sobre la suma cobrada se pagó al demandado $1,549.81 por concepto del diez por ciento, habiéndosele pagado además $685.60 por concepto de gastos de su oficina; que cuando el demandado cesó como agente de la demandante tenía y aun tiene en su poder ciertos recibos que se especifican montantes a $84.50; que también tenía y aun tiene en su poder sin entregar a la demandante la suma de $5,906.47 de recibos que le envió la demandante y que él cobró, y que la demandante ha estado dispuesta siempre y lo está en todos momentos, a satisfacer al demandado Adrián Brenes cualquier suma de dinero que, después de justa comprobación, resultare debérsele por concepto de los cobros hechos y por consecuencia del desempeño de su cargo como agente de la demandante, y a pesar de ello éste se obstina en retener el dinero y recibos de la demandante.

Se alega, además, que el proceder del demandado es contrario a los deberes que le imponían los estatutos de la cor-

poración demandante y a virtud de todo se pide a la corte que expida "un auto alternativo de *mandamus,* dirigido contra el demandado en este caso, Adrián Brenes, vecino de Guayama, P. R., ordenándole que sin excusas ni pretexto alguno, entregue a la demandante, dentro del plazo razonable que esta corte fije, los setenta y seis recibos librados por la demandante "El Ancora," que relaciona en la alegación sexta, y la suma de CINCO MIL NOVECIENTOS SEIS DOLLARS CUARENTA Y SIETE CENTAVOS mencionados en la alegación SÉPTIMA apercibiéndosele de desacato al tribunal en el caso de incumplimiento de dicha orden, o que, de lo contrario, comparezca ante esta corte en el día y hora que la misma se sirva designar al efecto, para que aduzca razones por las cuales no deba expedirse dicho auto en forma definitiva, con apercibimiento igual del auto definitivo."

Como ya hemos dicho, la corte expidió el auto y después de oídas ambas partes lo anuló declarando la demanda sin lugar especialmente porque existiendo otro remedio adecuado en el curso ordinario de la ley no procedía el extraordinario de *mandamus* y porque el demandado había cesado en su cargo y no podía compelérsele a actuar.

La parte apelante ha hecho un estudio tan cuidadoso en su alegato y revela tanta buena fe y tal convencimiento de que le asiste la razón, que desearíamos disponer del tiempo necesario para examinar uno por uno los errores que señala. Ello nos llevaría a exponer el origen y desarrollo del auto de *mandamus* a la luz de la historia, de las diferentes leyes sobre la materia y de la copiosa jurisprudencia establecida por las cortes al aplicar las leyes a las variadísimas situaciones surgidas en la práctica. El número de asuntos pendientes en la corte no nos permite proporcionarnos esa satisfacción.

La ley en Puerto Rico es tan clara que ella por sí sola, por sus propios términos, sostiene la sentencia recurrida.

Se aprobó en 1903, Estatutos de 1911, p. 289, y sus tres primeras secciones leen como sigue:

"Sección 1.—El auto de *mandamus* es un auto altamente privilegiado dictado por el Tribunal Supremo de la Isla, o por las Cortes de Distrito de Puerto Rico, a nombre del Pueblo de Puerto Rico, y dirigido a alguna persona o personas naturales, a una corporación o a un tribunal judicial de inferior categoría, dentro de su jurisdicción, requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes. Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo.

"Sección 2. El auto de *mandamus* podrá dictarse por el Tribunal Supremo o por las Cortes de Distrito o por cualquiera de sus magistrados o jueces cuando se hallen en el ejercicio de sus funciones o en sus oficinas, y se dirigirá a cualquier tribunal inferior; corporación, junta o persona obligada al cumplimientoo de un acto que la ley particularmente ordene como un deber resultante de un empleo, cargo o función pública; pero aun cuando puede requerir a un tribunal inferior o a cualquiera de sus jueces para que adopte este criterio, o para que proceda al desempeño de cualquiera de sus funciones, el auto no puede tener dominio sobre la discreción judicial.

"Sección 3. Este auto puede o no (no podrá) dictarse en los casos en que se encuentre un recurso adecuado y eficaz en el curso ordinario de la ley. Podrá dictarse basado en los informes de la parte beneficiada e interesada."

Se ve, pues, que el auto considerado por la propia ley como "altamente privilegiado," haciendo el mismo legislador la declaración expresa de que "no podrá dictarse en los casos en que se encuentre un recurso adecuado y eficaz en el curso ordinario de la ley," solo cabe para obligar "al cumplimiento de un acto que la ley particularmente ordene como un deber resultante de un empleo, cargo o función pública." Y eso no ocurre en el presente caso.

Seguramente existen leyes más amplias que la de Puerto Rico y es cierto que la jurisprudencia, guiada por el deseo de asegurar una más pronta y eficaz administración de la justicia, ha extendido en algunas ocasiones el radio de acción del auto, pero ni las leyes ni la jurisprudencia que se

nos han citado o que hemos podido examinar, llegan a comprender casos como el presente.

Si contra un agente que tenía con su principal las relaciones que se expresan en la demanda, al cesar en su empleo y surgir dificultades en el arreglo de las cuentas, pudiera expedirse un auto de *mandamus* para obligarlo a devolver unos recibos por valor de $84.50 que se alega que se enviaron y $5,906.47 en efectivo que se dice percibió por otros recibos que también se le enviaron, expresándose además que la demandante está dispuesta a pagar al agente calquier suma de dinero que resultare debérsele después de justa comprobación por concepto de los cobros hechos, entonces cualquier corporación podría sustituir el procedimiento ordinario por el extraordinario de *mandamus* para exigir el cumplimiento de las obligaciones contraídas para con ella por sus agentes y empleados y siguiendo en ese rumbo cualquier persona en cualquier caso podría usar el auto "altamente privilegiado" de *mandamus* en vez del procedimiento ordinario, ya que en verdad en cada pleito que se inicia lo que se reclama es el cumplimiento de una obligación.

En *Belaval* v. *Todd,* 24 D.P.R. 820, 832, esta corte dijo:

"Lo único que está sujeto al *mandamus* son los deberes *publici juris* y jamás las obligaciones de pagar una suma específica reconocida por sentencia."

■ Por el séptimo y último error se levanta la cuestión de costas. Quizá la corte no debió imponerlas porque todo revela en este caso, según ya hemos indicado, buena fe por parte de la demandante, pero no estamos en condiciones de decir que abusara de su poder discrecional al imponerlas. Dado lo claro de la ley sobre *mandamus* que rige en Puerto Rico, no obstante su aparente buena fe, no puede sostenerse contra el juicio de la corte *a quo* que no existiera temeridad alguna por parte de la demandante.

*Debe confirmarse la sentencia apelada.*